**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**THOMAS L. MAY,**

> **Plaintiff,**

> **v.**

> > **Civil Action 2:19-cv-4479
> > Judge James L. Graham
> > Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

> **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Thomas L. May, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## I.    BACKGROUND

Plaintiff filed his application for DIB on April 10, 2018, alleging that he was disabled beginning April 2, 2018. (Tr. 147–61). After his application was denied initially and on reconsideration, the Administrative Law Judge ("ALJ") held a hearing on February 12, 2019. (Tr. 32–62). On April 9, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 12–31). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on October 7, 2019 (Doc. 1), and the Commissioner filed the administrative record on December 19, 2019, (Doc. 7). This matter is ripe for consideration. (*See* Docs. 8, 9, 10).

Because Plaintiff's Statement of Errors pertains to only his mental health, the Undersigned will focus her analysis on the same.

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Plaintiff's hearing:

At the hearing, the claimant testified that he takes psychotropic medication from his primary care doctor. He stated that he has not talked to a specialist about his symptoms but instead talks to his nurse practitioner. The claimant testified that his mental health symptoms have progressed since he stopped working because he no longer has the opportunity to interact with others. However, as set forth below, the record shows that the claimant had few complaints, limited treatment and generally normal findings on examinations.

(Tr. 18).

### B. Relevant Medical Evidence

The ALJ also summarized Plaintiff's mental health records and symptoms:

The record shows that on November 16, 2017, the claimant reported symptoms of anxiety and depression. The claimant stated that he was having "issues with foster children" and also dealing with changes at work (Exhibit 3F/7). He was diagnosed with depression and anxiety. The claimant was treated with medication. On November 29, 2017, the claimant's examination was negative for memory loss and he was not nervous or anxious (Exhibit 2F/9). In a January 5, 2018 follow up visit, the claimant had normal findings on examination (Exhibit 2F/13). In April 2018, the claimant had a normal mood and normal behavior on examination (Exhibit l0F/7, 12F/5).

On May 23, 2018, the claimant underwent a consultative psychological evaluation (Exhibit 6F). The claimant was diagnosed with major depressive episode, moderate with anxious distress (Exhibit 6F).

(Tr. 18–19).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirement through December 31, 2022, and had not engaged in substantial gainful employment since April 2, 2018, the alleged onset date. (Tr. 17). The ALJ determined that Plaintiff suffers from the following severe impairments: obesity, coronary artery disease, cardiomyopathy, asthma, and degenerative disc disease of the lumbar spine. (Tr. 18). In addition, the ALJ determined that Plaintiff's medically determinable mental impairments do not cause more than minimal limitation in her ability to perform basic mental work activities and are therefore nonsevere. (*Id.*). The ALJ found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 20).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record, [the ALJ] find[s] that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can occasionally climb ramps and stairs, occasionally stoop, kneel, crouch, crawl and balance, never climb ladders, ropes or scaffolds, never work around hazards such as unprotected heights and work in proximity to exposed moving mechanical parts, and cannot engage in commercial driving.

(Tr. 21).

As for the relevant opinion evidence, the ALJ first considered the opinion of the state agency psychological consultants, who found that Plaintiff has a severe mental impairment. (Tr. 19). The ALJ had the following to say about their opinion:

> The State Agency psychological consultants found that the claimant had a severe mental impairment; however, this is not persuasive. The only significant evidence of moderate psychological symptoms is the psychological consultative evaluation. This is only a one-time examination. The treatment records generally show few complaints and those complaints were related to situational stressors. For example, the claimant complained of depression and anxiety for "several years" and said that he had worsening stressors involving family issues. He receives psychotropic medication from his primary care physician and at times his "review of systems"

noted subjective complaints but his objective physical examination findings are all completely normal with respect to his mental health (Exhibits 7F, 8F/8, l0F/7, 12F/5, 13, 18, 13F/20). On July 2, 2018, about three months after his alleged onset date his primary care physician noted that the claimant's depression was in partial remission (Exhibit 8F/8). The longitudinal record does not provide any consistent support for the subjective complaints the claimant presented to the psychological examining consultant.

(*Id*.).

Next, the ALJ the considered the mental health opinion of Dr. Gregory Johnson:

This was a one-time evaluation and was not consistent with the record as a whole. I note that the consultative examiner found no limitation in understanding, remembering and acquiring information and only a "somewhat elevated" risk in concentration, persistence and pace for complex tasks which appears to suggest only "mild" limitations. Additionally, Dr. Johnson found that the claimant had a "somewhat elevated" risk in social functioning and for adapting to stressors and these also appear to suggest mild limitations. Thus, the consultative evaluation could be interpreted also as supporting no severe psychological impairment. However, to the extent that the State Agency interpreted the consultative examination as consistent with severe depression/moderate limitation, I find it nonpersuasive.

(*Id*.).

Despite these opinions, the ALJ nevertheless concluded that Plaintiff's mental health impairments were not severe, noting:

[T]reatment notes continued to show normal findings (Exhibit 7F, 12F/13, 12F/18, 13F/20). Thus, there is no evidence that the claimant's mental impairments caused more than a minimal limitation in his ability to work. Certainly, there is no support that the depression progressed to any extent since he stopped working and his skilled past work required significant abilities, which suggest that his chronic depression/anxiety did not cause more than minimal impact on his work activity in the past.

(*Id*.).

Relying on the VE's testimony, the ALJ concluded that Plaintiff was capable of performing his past relevant work a production coordinator, as well as other jobs that exist in significant numbers in the national economy. (Tr. 25–26). She therefore concluded that Plaintiff was not

4

disabled within the meaning of the Social Security Act. (Tr. 26).

## II.  STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III.  DISCUSSION

Plaintiff raises only one assignment of error—that the ALJ failed to properly characterize his mental health impairments as severe, and consequently, the RFC fails to accommodate his mental health problems. (*See generally* Doc. 8).

As noted, the ALJ found that Plaintiff's mental health impairments are not severe. (*See* Tr. 18–20). And the Undersigned does not question that finding. To the contrary, substantial evidence supports that conclusion. But, "[w]hen formulating an RFC, an ALJ must consider the combined

effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Kochenour v. Comm'r of Soc. Sec. Admin.*, No. 3:14-CV-2451, 2015 WL 9258609, at *6 (N.D. Ohio Dec. 18, 2015) (quotation marks and alteration omitted) (citing *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013) ("[T]he ALJ's assessment of residual functional capacity reflects a claimant's functional capacity in light of all his limitations, not just those that are severe.")).

The ALJ must do so because

> [w]hile a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.  For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

*Patterson v. Colvin*, No. 5:14-cv-1470, 2015 WL 5560121, at *4 (N.D. Ohio Sept. 21, 2015) (citations omitted).  Said differently, "'an ALJ's conclusion that an impairment is non-severe is not tantamount to a conclusion that the same impairment . . . does not impose any work-related restrictions.'"  *Kochenour*, 2015 WL 9258609, at *6 (quoting *Patterson*, 2015 WL 5560121, at *4).

The ALJ in this case did precisely what the law prohibits.  Indeed, after detailing the mental health evidence and concluding that Plaintiff does not suffer from severe mental health impairments, the ALJ concluded that her job was done with regard to Plaintiff's mental health. She stated:

> A finding that the claimant's mental health impairment is non-severe equates to a finding that the claimant's mental health impairment is not expected to more than minimally affect the ability to perform basic work-related functions, as required by SSR 85-28 and 96-8p.  Here, I find specifically that the no more than mild deficits related to the mental impairments discussed above do not warrant, considering the dearth of mental health evidence in the record overall, any limitation in the residual

functional capacity and, thus, I do not further consider them at Steps 4 and 5, below. The residual functional assessment considers only functional limitations that result from an individual's medically determinable impairments (SSR 96-8p).  Here, I specifically find that no functional limitations arise from the claimant's mild mental health conditions.

(Tr. 20).

Remand is required.  *See, e.g.*, *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190–91 (6th Cir. 2009) ("[O]nce it was determined that Simpson suffered from severe physical impairments, . . . the ALJ was required to consider the impairments resulting from this condition and her adjustment disorder with anxiety and depression in assessing her RFC. Instead, the ALJ held that 'based on my evaluation of the claimant's mental impairment as not a severe impairment . . . she does not have any limitations stemming from that mental impairment.' The ALJ's finding is contrary to controlling law."); *James v. Comm'r of Soc. Sec.*, No. 1:19 CV 570, 2020 WL 836493, at *10 (N.D. Ohio Feb. 20, 2020) ("[A]n ALJ's failure to explain how a claimant's mild psychological limitations affect the RFC assessment constitutes reversible error where the ALJ makes no mention of these non-severe mental impairments in the RFC analysis."); *Workman v. Berryhill*, No. CV 7:16-261-DCR, 2017 WL 3880661, at *3 (E.D. Ky. Sept. 5, 2017) ("Although the non-severe determination of the claimant's mental impairment was not in error, the ALJ was still required to consider the limiting effects of all impairments, including limitations resulting from non-severe impairments, when determining [the] RFC."); *Kochenour*, 2015 WL 9258609, at *6 (remanding because "after the ALJ considered all of the evidence of record concerning Plaintiff's depression at step two, she went on to discuss only Plaintiff's physical impairments in her RFC analysis"); *Patterson*, 2015 WL 5560121, at *5 ("Yet [the ALJ's] RFC analysis focuses exclusively on Plaintiff's physical impairments, without any discussion of whether her non-severe mental impairments contribute, in any way, to an inability to perform substantial gainful work.

Under these circumstances, the Court cannot conclude that the ALJ properly considered all of her impairments in accordance with SSR 96–8 p and remand is necessary."); *Garcia v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 805, 811 (S.D. Ohio 2015) (internal citation omitted) ("In other words, the ALJ found no limitations arising from Plaintiff's mental impairments simply because those impairments were not severe. Such conclusion is error because it conflates the distinct steps of the sequential review process and fails to reasonably explain the absence of limitations arising from Plaintiff's mental impairments. This error is not harmless.").

The Undersigned recognizes that Plaintiff's non-severe mental health impairments, even when considered in combination with his severe physical impairments, may not require additional workplace restrictions.  But the ALJ's "detailed analysis at step two does not relieve [her] of her duty to provide an explanation as to the holistic impact of all impairments, both severe and non-severe, specifically in relation to Plaintiff's RFC." *Kochenour*, 2015 WL 9258609, at *6 (ordering remand despite "recogniz[ing] the depression was so minimally limiting that no mental restrictions should factor into the RFC").

Upon remand, the ALJ should explicitly discuss Plaintiff's mild mental health limitations when crafting Plaintiff's RFC.  If the resulting RFC incorporates mental restrictions, the ALJ must then determine whether Plaintiff can meet the demands of his prior job or the other jobs in the national economy, despite his mental and physical limitations.

### IV.    CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## V.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date:   April 29, 2020                                    /s/ Kimberly A. Jolson
                                                         KIMBERLY A. JOLSON
                                                         UNITED STATES MAGISTRATE JUDGE